■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES DAVIS, Respondent.—Order of the Supreme Court, New York County, entered August 21, 1978 dismissing the indictment charging respondent with one count of perjury in the first degree affirmed. While we agree that the conclusion reached by Criminal Term was proper, we are unable to concur in all of the reasons relied on to justify that determination. We hold, as a matter of law, that the defendant did not recant his testimony. However, we are in agreement that the indictment was bottomed upon an answer given to the Grand Jury which was of little relevance to the subject matter of the investigation and, in the circumstances of this case, was intended as a perjury trap (cf. *People v Tyler,* 46 NY2d 251). The basis for the indictment is the alleged falsity of defendant's testimony that during his interrogation by his superior, Lieutenant Culley, Culley made the statement that there were witnesses who had seen a man defendant's size beating another man on 19th Street. Defendant's response to Culley was that he never got out of his car, a response which defendant admitted to the Grand Jury was untrue. Although defendant's testimony consumed approximately 125 pages of the transcript, this matter takes approximately one page. When the statement was volunteered, the prosecutor proceeded immediately to pin defendant down to this precise portion of the answer. Once this was accomplished, the matter was abruptly abandoned. The defendant was recalled the following day. While other facets of the conversation were gone into in detail, this issue was not again addressed. In these circumstances, the conclusion is impelling that the question asked was intended to entrap defendant into the commission of perjury. It is interesting to note that although the investigation was directed at the activities of one Joseph (Joe Beck) Di Palermo, the questions relating to him were concentrated in approximately five pages of the defendant's testimony, although there are scattered references to him in other portions of that testimony. Concur—Ross, Bloom and Yesawich, JJ.

Birns, J. P., and Sandler, J., concur in a memorandum by Sandler, J., as follows: The People appeal from an order dismissing on varied grounds an indictment charging the defendant with one count of perjury in the first degree. The important question presented is comparable to that addressed in

a different factual setting by the Court of Appeals in *People v Tyler* (46 NY2d 251). After the defendant gave the single allegedly false answer that was to result in the indictment, the Assistant District Attorneys in charge of the investigation did not question him further with regard to the subject matter of the answer or confront him with the evidence contradicting it in what was an obvious prosecutorial decision to avoid or limit the possibility that the defendant might qualify or explain his answer in a way that would impair the viability of a perjury charge. The dispositive issue is whether the resulting indictment may be sustained where the evidence, though legally sufficient to support it, raises a substantial question as to whether the defendant's answer was in fact intentionally false. In my opinion, the indictment should not stand. Preliminarily I do not agree with my brothers that the answer alleged to be perjurious was "wholly immaterial." The stated purpose of the Grand Jury proceedings was to determine whether the defendant, a homicide detective, had been corruptly influenced to stop and demand identification of an undercover police officer assigned to investigate suspected organized crime activity in a certain location. Although the defendant's action did not disclose the true identity of the undercover officer, it inevitably led to the aborting of the investigation. The defendant admitted in the Grand Jury that he had concealed from his superior officers this highly suspicious action when they questioned him with regard to it several days later. As the District Attorney persuasively argues, the answer alleged to be false could reasonably be considered an effort by the defendant to give a false explanation for his having lied to his superiors with regard to the behavior that was the subject matter of the Grand Jury proceedings. As such, it cannot be considered immaterial as a matter of law. Even if it were concluded that the answer was immaterial, I am not persuaded that the indictment could properly be dismissed on that ground in view of CPL 210.20 (subd 1, par [b]) which allows dismissal of an indictment or any count thereof upon the ground that: "The evidence before the grand jury was not legally sufficient to establish the offense charged or any lesser included offense". The trial court's analysis of this section in an exceptionally able opinion is interesting, but I doubt that the plain meaning of the quoted words may be so quickly disregarded on the basis of a judgment as to the section's true purpose. Turning to the dispositive issue stated above, I agree with the District Attorney that the facts here are so different in significant respects from those described by the court in *People v Tyler (supra),* that much that was said in the *Tyler* opinion cannot be applied here without careful qualification. Thus, the interviews concerning which this defendant was questioned were clearly relevant to the conduct under investigation. They took place only a few weeks before the defendant was questioned in the Grand Jury and the defendant had been on notice during the interviews that the matter was important. The answer alleged to have been false was in no sense a peripheral detail of a long ago meeting. The question eliciting the answer, which in substance asked the defendant to describe what occurred at the meeting, can hardly be described as having been carefully tailored to elicit a perjurious response. Indeed, the defendant having acknowledged that he had lied to his superior officers, the prosecutors could not have anticipated that he would give a false statement as to what occurred during an interview in which his superior officers would be available to give contradictory testimony. Notwithstanding these significant differences from the fact pattern described in the *Tyler* opinion, that opinion does embody a principle highly pertinent here. The Court of Appeals made emphatically clear that it is unacceptable for a prosecutor in a Grand Jury

investigation to employ tactics designed to secure a perjury indictment rather than to advance the substantive purposes of the investigation. (See *People v Tyler, supra,* pp 259, 262.) And although such an evaluation would not be fair here with regard to the Grand Jury proceedings as a whole, it obviously applies to the response by the prosecutors to the answer at issue in the indictment. During his answer to a question as to what had occurred at the second of two interviews with his superior officers, the defendant said: "and he said, 'Well, we have witnesses that a guy your size' and I'm six seven and weigh 275 pounds so toothere *[sic]* is not many people my size, 'Was on 19th Street and kicking the shit out of somebody'. So, I says, 'I never got out of the car. I never got out of the car.'" The following then occurred: "Q Did you just tell us, tell the grand jury that during this conversation with the Lieutenant and the sergeant you were told by the Lieutenant that there was an allogation *[sic]* that somebody fitting your description had been assaulting somebody? A Seen in the area, yes, sir. Q No, no. A Oh. Q I didn't say that, please, Detective. Didn't you just tell us that you were told during this meeting with the Lieutenant and the sergeant by the Lieutenant that someone fitting your description was seen in the area assaulting somebody? A Yes, sir." This subject was instantly dropped. The defendant was never thereafter questioned with regard to this answer although the interrogation continued with regard to other matters on the same day and he was questioned at great length on the following day. Nor was the defendant ever confronted with the information that the superior officers in question denied having made the statement he attributed to them. Several days later the two officers were called before the Grand Jury to give their recollection of the interviews. They both denied the defendant's statement. They were recalled on a second occasion to repeat and amplify the denial. The reason for the failure to pursue with the defendant the subject matter of the allegedly false answer is obvious. The prosecutors were concerned lest any further questions on the subject, or any confrontation of the witness with the fact of the contradictory evidence, would elicit a response that might weaken their single contemplated perjury count. Accordingly, they failed to do that which would have been normal and appropriate if their dominant concern was to elicit the truth and to advance the substantive ends of the inquiry. Although this prosecutorial behavior was in conflict with the principle set forth in *People v Tyler* (46 NY2d 251, *supra)* I do not believe that without more it would require dismissal of the indictment. The legal consequences depend on the totality of the circumstances presented. In *Tyler,* the related issue was analyzed by the Court of Appeals in the light of that court's conclusion that the answers alleged to have been perjurious could well have involved failures of memory with regard to peripheral details of a meeting that had occurred a year before. In commenting (p 260) on the failure of the prosecutor in that case to stimulate the defendant's memory "if only by limited cues, with some of the contrary facts acquired from the surveillance team", the court went on to observe (p 261): "It is not so much that the witness deserves an opportunity to refresh his recollection; it is that the foundation established by stimulation of recollection bears on resolution of the ultimate issue: whether defendant is deliberately falsifying * * * But the nature, and especially the intrinsic significance, or insignificance, of the event to be recalled will, almost invariably, be critical in determining the cues, if any, the prosecutor should provide for the witness, if it is the truth that is being sought." And the Court of Appeals went on to say (p 262): "It is not suggested that full disclosure of the information known to the prosecutor must have been made

to defendant, especially if disclosure would reveal too much of how the investigation was conducted and how far it has proceeded. Yet, the examiner has an inescapable burden to provide a transcript which demonstrates that the witness is testifying falsely intentionally, rather than mistakenly". Unlike the situation described in *Tyler,* defendant's answer in issue here cannot reasonably be attributed under all the circumstances to a failure of memory. However, the facts here, although in a different way, present a comparable problem with regard to whether or not he was intentionally falsifying. However improbable aspects of the defendant's testimony may appear, it is indisputable that his detailed accounts of his actions when he stopped the undercover officer and of his interviews with his superiors were in all basic respects in agreement with the recollections of the independent witnesses except for the one answer that gave rise to the indictment. The question raised then is why in this one answer he intentionally lied, knowing, as he must have, that the two superior officers could and would contradict him. Surely there were available to him alternative ways to explain his having lied to them that did not put him in imminent danger of a perjury indictment. At the very least, a substantial possibility was presented that this single allegedly false answer during a very detailed and exhaustive interrogation may not have been intentionally false, and may have represented a misunderstanding, or possibly defendant's interpretation of the meaning of what was said rather than the precise words used. In short, an issue different than that presented in *Tyler,* but essentially comparable to it, is presented. Moreover, the contradictory evidence here, unlike that in *Tyler,* did not involve aspects of a confidential investigation that the prosecutors might reasonably wish to withhold from a witness suspected of criminal conduct. If he was testifying falsely on purpose, he must have known that his superior officers had given or would give directly contradictory information. No appropriate purpose therefore can be perceived here for failing to confront the witness with the substance of that contradictory information in an effort to determine the truth and advance the substantive purposes of the proceedings. The prosecutorial desire to preserve unimpaired as a basis for indictment the one answer given by the defendant that they felt in a position to refute cannot justify what occurred here. For the foregoing reasons, I join in affirming the Trial Term order dismissing the indictment.